PD-0826-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/4/2015 3:34:06 PM
Accepted 8/6/2015 3:07:56 PM
ABEL ACOSTA
CLERK

NO. PD-0826-15

IN THE
TEXAS COURT OF CRIMINAL APPEALS

_____

No. 03-14-00454-CR
In the Court of Appeals for the
Third District of Texas
June 4, 2015

_____

**CLIFTON CREWS HOYT,**
**Appellant**

**vs.**

**THE STATE OF TEXAS,**
**Appellee**

_____

**PETITION FOR DISCRETIONARY REVIEW**
**OF APPELLANT CLIFTON CREWS HOYT**

By: */s/ John T Floyd*
John Thomas Floyd III
Texas Bar No. 00790700

By: */s/ Christopher M. Choate*
Christopher M. Choate
Texas Bar No. 24045655

Principal Office
The Kirby Mansion
2000 Smith Street
Houston, TX 77002
Tel: 713-224-0101

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii
TABLE OF AUTHORITIES .........................................................................................ii
ORAL ARGUMENT ...................................................................................................1
ABBREVIATIONS AND REFERENCES ...................................................................1
IDENTITIES OF JUDGE, PARTIES, AND COUNSEL ...........................................1
STATEMENT OF THE CASE.....................................................................................2
GROUNDS FOR REVIEW .........................................................................................5
ARGUMENT ...............................................................................................................5
    1.  No Probable Cause to Detain Petitioner after Initial Traffic Stop. ..................5
    2.  The Evidence Was Legally Insufficient To Sustain The Conviction.............11
PRAYER FOR RELIEF ............................................................................................17
APPENDIX ...............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Williams*, 407 U.S. 143 (1972)....................................................................6
*Annis v. State*, 578 S.W.2d 406 (Tex. Crim. App. 1979) ........................................16
*Brooks v. State*, 323 S.W.3d 912 (Tex. Crim. App. 2010) ......................................11
*Compton v. State*, 120 S.W.3d 375 (Tex. App.—Texarkana 2003) ................. 12, 15
*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000)..........................................17
*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011)............................6
*Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994) ...................................12
*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005)................................ 6, 8, 10
*Kirsch v. State*, 306 S.W.3d 738 (Tex. Crim. App. 2010).......................................11

**Statutes**

TEX. PENAL CODE § 49.01(2) ..................................................................... 5, 9, 10, 13
TEX. PENAL CODE § 49.04.........................................................................................2, 5
TEX. TRANSP. CODE § 545.101(a) ......................................................................... 7, 8, 9
TEX. TRANSP. CODE § 724.012(b)(3)(B) ............................................................. 11, 15

**Rules**

Tex. R. App. Proc. 38.1(e) ...........................................................................................1
Tex. R. App. Proc. 66.3 ................................................................................................5
Tex. R. App. Proc. 9.4(i)(2)(D) ..................................................................................18
Tex. R. Evid. 702 ........................................................................................................12

## ORAL ARGUMENT

The issues presented by this petition are based exclusively on the Reporter's Record, and undersigned counsel does not believe the decisional process would be aided by oral argument. Tex. R. App. Proc. 38.1(e).

## ABBREVIATIONS AND REFERENCES

The Court of Appeals memorandum opinion is attached to this Petition in the Appendix.

The Reporter's Record (RR) is referred to by volume number then page number (e.g., RR., Vol. 2, p. 5).

The Court of Appeals opinion is referred to as "Memorandum Opinion."

## IDENTITIES OF JUDGE, PARTIES, AND COUNSEL

The trial was conducted before the Honorable Tom Gossett, in the 391st Judicial District, Tom Green County.

The attorneys for Petitioner are John T. Floyd III and Christopher M. Choate of the John T. Floyd Law Firm, 2000 Smith Street, Houston, Texas 77002, 713-224-0101 (Office), 713-237-1511 (Fax). These attorneys represented Petitioner on appeal, as well.

The attorney for the State of Texas is Richard Villarreal, Assistant District Attorney for Tom Green County, 124 W. Beauregard, San Angelo, Texas 76903,

325-659-6584 (Office), 325-658-6831 (Fax). Mr. Villarreal represented the State of Texas on appeal, as well.

## STATEMENT OF THE CASE

This case concerns a conviction for DWI obtained pursuant to TEX. PENAL CODE § 49.04.

On July 6, 2010, Petitioner was charged in a two count indictment with driving while intoxicated in Tom Green County. Each count had a second enhancement paragraph.

On June 11, 2014, a bench trial of this matter was conducted before the Honorable Tom Gossett in the 391st Judicial District Court, Tom Green County.

Testimony at trial revealed that San Angelo Police Department patrol officer Bruce Stewart was dispatched to a Whataburger restaurant on Sherwood Way at 2:11 in the morning of March 6, 2010 to investigate a report about a suspected intoxicated driver there. (RR., Vol. 2, p. 22-23). Officer Stewart obtained a description of the suspect's vehicle from the dispatcher. *Id.*, at 23. However, no such vehicle was located at the restaurant. A vehicle matching the description was located by the officer on Alexander Street, traveling north toward Houston Harte. *Id.* Officer Stewart claimed he observed the vehicle make a wide right turn off Alexander onto Houston Harte. *Id.*, at 24. Believing the wide right turn to be a traffic violation, Officer Stewart initiated a traffic stop by turning on his overhead

strobe lights. *Id.* At that point, according to Officer Stewart, the vehicle veered to the right and struck the curb as it came to a stop on that side of the street. *Id.*

The officer claimed he observed Petitioner's eyes were bloodshot and he smelled of alcohol. *Id.* The officer asked Petitioner if he had been drinking to which he replied he had not. *Id.*

Based on these two indicators, Officer Stewart determined that he had probable cause to conduct a Standard Field Sobriety Test ("SFST"). *Id.*, at 27. The officer first administered the horizontal gaze nystagmus test ("HGN"). *Id.*, at 28. This test has six clues indicating intoxication. *Id.*, at 31. In response to a question by the trial court, Officer Stewart said he found all six clues in Petitioner's test. *Id.*

Officer Stewart testified that he next administered the "walk-and-turn" test, involving nine heel-to-toe steps down a line, a controlled turn, and nine additional heel-to-toe steps. *Id.*, at 32. There are eight clues to this test. The officer said he found six clues in Petitioner's test. *Id.*, at 34.

Officer Stewart testified that he then conducted a "one-leg stand" test, which involves having the subject raise one leg six inches above the ground for as long as he/she can or until the officer instructs him or her to stop. *Id.*, at 35. There are four clues to this test. The officer said he found three in Petitioner's test. *Id.*, at 36.

At that point advised Petitioner that he was under arrest for driving while intoxicated. Id., at 37. The officer then conducted a search of Petitioner's person

3

incident to the arrest. *Id*. The search revealed what the officer said was less than two ounces of marijuana in Petitioner's left back pocket. *Id*. Petitioner's vehicle was then inventoried by another officer at the scene, which allegedly revealed one marijuana cigarette. *Id*. Officer Stewart testified that the original basis for Petitioner's arrest was alcohol, but upon discovery of what he suspected to be marijuana, he believed Petitioner's alleged intoxication was a combination of both substances. *Id.*, at 37. Petitioner refused to give a breath sample. *Id.*, at 39. No warrant to secure a sample of breath was sought.

Testimony at trial established that the SFSTs were conducted in a vitally flawed manner.

On June 11, the trial court convicted Petitioner on Count One of the indictment, a third degree felony, and found the enhancement paragraph true based on Petitioner's plea, making his conviction a second degree felony; and acquitted him on Count Two.

Following a punishment hearing conducted on June 11, the trial court sentenced Petitioner to twelve (12) years in the custody of the Texas Department of Criminal Justice.

## STATEMENT OF PROCEDURAL HISTORY

The Third Court of Appeals issued its opinion in *Clifton Crews Hoyt v. State of Texas*, No. 03-14-00454-CR on June 4, 2015. No Motion for Rehearing was filed.

This Honorable Court granted Petitioner's motion for an extension of time in which to file this Petition for Discretionary Review on July 2, 2015.

This Petition for Discretionary Review is due on or before August 5, 2015.

## GROUNDS FOR REVIEW

1. The trial court erred in its denial of Petitioner's motion to suppress due to lack of probable cause to detain after initial traffic stop, which is a holding that is inconsistent with this Court's holdings in prior decisions. Tex. R. App. Proc. 66.3(c).

2. The evidence presented at trial was legally insufficient to prove beyond a reasonable doubt that Petitioner was driving while intoxicated pursuant to TEX. PENAL CODE §§ 49.04 and 49.01(2)(A). The Court of Appeals opinion which upheld the conviction in the face of such insufficiency calls for the exercise of this Honorable Court's power of supervision. Tex. R. App. Proc. 66.3(f).

## ARGUMENT

### 1. No Probable Cause to Detain Petitioner after Initial Traffic Stop.

Officer Stewart arguably had probable cause to proceed to the Whataburger restaurant based on the dispatch call about an intoxicated driver there. The

5

dispatcher, however, did not provide the officer with any additional information about how he/she received the information about the alleged intoxicated driver. The dispatcher could only provide Officer Stewart with a description of the vehicle, and Officer Stewart could not state how the dispatcher received the information. (RR., Vol. 2, p. 41-42).

After finding no such driver or described vehicle at the Whataburger, the officer did not have enough information to form a reasonable suspicion that criminal activity was afoot in the area. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Furthermore, he did not conduct an investigation to determine if an intoxicated driver had been at the location, and if so, to obtain a description of that individual. The dispatcher's call based on a bare-bones—probably anonymous—tip did not establish probable cause to believe a crime had been committed.

This is not a case where the information provided to the police dispatcher came from a citizen-informant who identified himself so he could be held accountable for the accuracy and veracity of his report. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.1s 612 (1972). In such a context, it would be objectively reasonable to believe that an intoxicated driver was present at the Whataburger or in the area. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011).

In this situation, however, Officer Stewart did not have a reasonable suspicion to pursue the similar vehicle found heading toward Houston Harte because he had no information independent of the bare-bones information that there was a suspected DWI driver in the area. By failing to conduct an independent investigation, the officer had no legitimate reason to follow Petitioner's vehicle in search of probable cause to initiate a stop. That probable cause came, according to the officer, after he allegedly observed Petitioner making a wide right turn off Alexander onto Houston Harte.

Officer Stewart testified he initiated the traffic stop only after he observed the suspect vehicle make an alleged wide right turn off Alexander Street onto Houston Harte. (RR., Vol 2, p. 23). He did not have probable cause to initiate a stop before that turn. Probable cause came into play because the Texas Transportation Code provides that an operator of a vehicle making a right turn at an intersection shall make both the approach and the turn as close as practicable to the right-hand curb of the roadway. TEX. TRANSP. CODE § 545.101(a).

Thus, it is important to consider that Officer Stewart did not initiate the traffic stop because he believed the driver of the vehicle was intoxicated. He had followed the suspect vehicle for four blocks and did not observe any traffic violations or indications that the driver was impaired. (RR., Vol. 2, p 42-43). He

further stated that it is commonplace for persons not impaired by alcohol to make "wide right turns" at intersections. *Id.*, at 44-45.

While a video camera ("dash cam") was installed in the Officer Stewart's patrol vehicle, the officer stated that the camera was not automatically activated by the vehicle or by the officer himself once his four-block surveillance began. *Id.*, at 46-47. This lack of video evidence precludes this court from having an adequate record from which to determine whether Petitioner actually made a "wide right turn" in a manner which would warrant a traffic stop pursuant to TEX. TRANSP. CODE § 545.101(a). As this Court pointed out in *Ford v. State*, an officer's conclusory testimony is not "specific, articulable facts."

> The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude that [Defendant] actually was, had been, or soon would have been engaged in criminal activity. Instead, *the trial court was presented only with a conclusory statement that [Defendant] was violating a traffic law. … [W]ithout specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable*.
>
> When a trial court is not presented with such facts, the detention cannot be 'subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances'. And 'when such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.' Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion

8

protection. If this Court were to hold as the dissent suggests, we would be removing the 'reasonable' from reasonable suspicion. Therefore, we adhere to the principle that specific, articulable facts are required to provide a basis for finding reasonable suspicion. *Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis.*" *Id.*, at 493 [Emphasis added]

Against this *Ford* backdrop, Officer Stewart's assertion that Petitioner made a wide right turn is nothing more than a mere opinion not supported by "specific, articulable facts in a reasonable-suspicion analysis." There is no independent corroboration in the reporter's record that Petitioner made a "wide right turn" off Alexander Street onto Houston Harte.

The question of whether Petitioner's right turn off Alexander onto Houston Harte was "wide" enough to constitute a violation of TEX. TRANSP. CODE § 545.101(a) is not supported by dash cam evidence in the record. It is supported only by an officer who admitted he made a litany of mistakes during the stop and detention of Petitioner.

In addition to lacking sufficient probable cause to initiate a traffic stop, the only probable cause Officer Stewart had to detain Petitioner for a SFST were his claimed observations that 1) Petitioner's eyes were bloodshot and 2) that he smelled of alcohol. (RR., Vol. 2, p. 26).

Neither observation, standing alone, is conclusive evidence of intoxication as defined by TEX. PENAL CODE § 49.01(2).. Officer Stewart had followed

9

Petitioner's vehicle for several blocks and there was nothing about his driving that indicated he was without "the normal use of [his] mental or physical faculties. TEX. PENAL CODE § 49.01(2)(A). Likewise, once Officer Stewart initiated the traffic stop and engaged Petitioner, the Petitioner did not exhibit slurred speech, unsteadiness, abnormal walking, unusual gait, or any other evidence indicating that he did not have "normal use of [his] mental or physical faculties."

Without these indicia of intoxication, the only observations Officer Stewart could conceivably rely upon to detain for the SFST were Petitioner's alleged bloodshot eyes and odor of alcohol. These two observations alone are insufficient probable cause to detain because, as Officer Stewart testified, they provide no insight into a person's mental or physical faculties, they do nothing to establish an individual's blood alcohol concentration, and they do not "quantify any level of impairment." (RR., Vol. 2, p. 53-54).

Thus, Officer Stewart did not have either probable cause or a reasonable suspicion to believe Petitioner was intoxicated beyond the legal limit set forth in TEX. PENAL CODE § 49.01(2)(B) to detain and/or probable cause to conduct the SFST based solely on bloodshot eyes and the odor of alcohol.

Petitioner's conviction was obtained in a manner that is inconsistent with this Court's holding in *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005), and therefore this petition for discretionary review should be granted.

**2. The Evidence Was Legally Insufficient To Sustain The Conviction.**

Petitioner argues that the evidence presented by the State at his bench trial was legally insufficient. *Brooks v. State*, 323 S.W.3d 912, 926 (Tex. Crim. App. 2010). The State's evidence consisted of 1) Officer Stewart's observations of Petitioner in the immediate moments after he initiated the traffic stop, and 2) Petitioner's subsequent performance on the SFST.

Officer Stewart's observations included Petitioner's bloodshot eyes and the odor of alcohol. (RR., Vol. 2, p. 26). As already noted, neither observation—standing alone or taken together—is conclusive evidence of intoxication or impairment. Because the odor of alcohol and bloodshot eyes are present at BAC levels lower than 0.08, only a breath or blood sample can factually determine whether Petitioner had a BAC higher than 0.08. Once Petitioner refused to consent to a breath test, Officer Stewart could have sought a warrant to conduct a blood draw. TEX. TRANSP. CODE § 724.012(b)(3)(B). The officer, however, did not do so.

Absent any medical or forensic evidence to support intoxication, the State relied exclusively on the officer's description of Petitioner's poor performance on the SFSTs as its evidence of intoxication. This Court has consistently held that evidence of poor performance on a SFST is only one indicator of intoxication. *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). And that indicator,

Petitioner argues, is reliable only if the SFST is conducted according to the standard protocols established by the National Highway Traffic Safety Administration.

This Court has held that a properly administered SFST is admissible scientific evidence under Tex. R. Evid. 702. *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). And while "slight" variations in the administration of portions of the SFST may not render the evidence unreliable, it may affect the weight of an officer's testimony. *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd).

Officer Stewart admitted on cross-examination that he greatly violated most of the SFST protocols. These were not "slight variations." They were violations that went to the very reliability of the intoxication determination the officer made pursuant to that test. These following examples of the officer's violations support this claim:

- Officer Stewart could not state how many SFSTs he had conducted or even place an estimate on the number. (RR., Vol. 2, p. 55).
- Officer Stewart did not turn off his strobe lights as he had been instructed in training to do during the HGN test. *Id.*, at 56.
- The clues from the HGN were indicated while the distracting strobe lights were on. *Id*., at 57-58.
- Officer Stewart did not turn Petitioner away from the distraction of passing traffic during the HGN as required under SFST. *Id*., 58.
- Officer Stewart allowed other officers present at the scene to walk by and around Petitioner during the HGN test which is considered an unacceptable distraction under the SFST. *Id.*, at 59.

- Officer Stewart continued to give Petitioner "instructions" while he was performing the "walk and turn" part of the SFST—instructions that should have been given before, not during, the test. *Id.*, at 65.
- Officer Stewart conceded giving instructions during the "walk and turn" test violated SFST protocols. *Id.*, at 66.
- Officer Stewart could not state with certainty that the violation of the "walk and turn" protocols did not invalidate the results of the test. *Id.*
- Officer Stewart conceded that the failure to follow the SFST protocols can have an impact on the results of the test. *Id.*, at 69.
- Officer Stewart admitted that he interfered with the "one-leg stand" part of the SFST in violation of protocol. *Id.*, at 70.
- Officer Stewart conceded that interference with the "one-leg stand" test can someone to lose their balance. *Id.*, at 72.

The foregoing factors undeniably reveal that Officer Stewart's administration of the SFST was riddled with errors. It certainly should not be a basis for a finding of intoxication within the meaning of TEX. PENAL CODE § 49.01(2).

Officer Stewart's testimony established only three factors which could be used to support a finding of intoxication: bloodshot eyes, odor of alcohol, and poor SFST performance. As shown by Petitioner, these three factors—considered either individually or collectively—are not legally sufficient to conclude that Petitioner lacked the "normal use of [his] mental or physical faculties." Furthermore, the evidentiary value of these factors is undercut by Officer Stewart's failure to: 1) activate his dash cam, 2) properly administer the SFST, and 3) failure to seek a warrant to obtain a blood sample.

Inasmuch as there is no reliable, scientific evidence of intoxication at or above 0.08, the Court's sufficiency of evidence review is confined to whether Officer Stewart's three core observations—bloodshot eyes, odor of alcohol, and poor SFST performance—are sufficient to establish intoxication beyond a reasonable doubt.

In analyzing the legal sufficiency issue, the Court of Appeals, in addition to the aforementioned core factors, considered Petitioner's traffic violation (the wide right turn) and his "veering from one side of the road to the other and striking the curb on both sides …" (Memorandum Opinion, p. 8). These factors, however, are undermined by 1) Officer Stewart's admission that non-intoxicated drivers frequently make wide right turns, and 2) his failure to activate his "dash cam" to record the alleged wide right turn and ensuing "erratic" driving behavior—something the Petitioner had not exhibited in the previous four blocks.

Intoxication became an issue only after the traffic violation stop was initiated and Officer Stewart claimed he detected an odor of alcohol and observed Petitioner's alleged bloodshot eyes. These two factors, not the wide right turn or the veering from one side of the road to the other or the striking the curb, triggered Officer Stewart's decision to conduct the SFST.

The Court of Appeals also relied heavily on Petitioner's poor SFST performance as support for the intoxication finding. Such a reliance on the SFST

strains the holding in *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). The violations were admitted by the officer and blatantly went to the heart of the reliability of the SFSTs. Furthermore, Officer Stewart could have sought a warrant for a blood sample pursuant to the protocols in TEX. TRANSP. CODE § 724.012(b)(3)(B).

As for the marijuana evidence, Officer Stewart conceded he was not a "drug recognition expert," and therefore could not make an expert determination about whether appellant was intoxicated from that substance. (RR., Vol. 2, p. 73). Although the indictment specifically charged that alcohol as the intoxicant in this case, Officer Stewart nonetheless made marijuana an issue when he stated that he believed appellant's intoxication was caused by a combination of both substances: alcohol and marijuana. The State, however, did not have the suspected marijuana tested to determine if it was, in fact, marijuana; accordingly, for the purposes of this review, the substance found by Officer Stewart has absolutely no bearing on this Court's analysis of the legal sufficiency of the evidence issue.

In sum, the "totality of the circumstances" relevant to the intoxication inquiry are scant:

- Officer Stewart did not find an intoxicated driver at the restaurant or any information that such a driver having been there;
- Armed with a suspect vehicle description, Officer Stewart identified Petitioner's vehicle as the suspect vehicle.

- Officer Stewart did not activate his vehicle dash cam to record his four block surveillance of Petitioner's vehicle per standard suspected traffic violation protocol;
- Officer Stewart conceded Petitioner drove in a normal manner during the officer's four-block surveillance;
- Officer Stewart initiated a traffic stop after he allegedly observed Petitioner make a wide right turn off Alexander onto Houston Harte;
- Officer Stewart turned on his strobe lights and activated the dash cam after the alleged traffic violation had occurred;
- Officer Stewart conceded the traffic violation is a frequent one made by motorists making right turns, and thus is not an indicator of intoxication;
- Officer Stewart observed Petitioner allegedly had bloodshot eyes and smelled of alcohol;
- Officer Stewart conceded that under the SFST protocols, bloodshot eyes and odor of alcohol alone are not indicators of intoxication;
- Officer Stewart admitted he greatly violated SFST protocols in all three phases of the test he administered to the Petitioner;
- Officer Stewart admitted these violations could have impacted the intoxication results of the test; and
- Officer Stewart did not seek a warrant to obtain a blood sample.

It has been held that, in general, an officer's testimony that a person was intoxicated provides sufficient evidence to establish the intoxication element of the offense of DWI. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979). In this case, however, Officer Stewart stated that the incidents of the traffic stop—wide right turn, hitting the curb, bloodshot eyes, and odor of alcohol—were not indicators of intoxication. And, more significantly, Officer Stewart could not say that the violations of the SFST protocols did not impact the results the test indicating intoxication.

Given the "totality of the circumstances" involved in this case, it cannot be said that the judgment of guilt rendered by the trial court was a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

That the trial court and Court of Appeals relied upon the SFSTs and totality of the circumstances in this particular case is a departure from the usual course of judicial proceedings to such a degree that this Honorable Court should exercise its power of supervision and grant discretionary review pursuant to Tex. R. App. Proc. 66.3(f).

## PRAYER FOR RELIEF

Wherefore, premises considered, appellant respectfully requests this Court to grant this petition for discretionary review, vacate the court of appeals decision, and remand this case back to that court with instructions that it enter a judgment reversing the appellant's conviction, or in the alternative, remand to the court of appeals with instructions to enter a judgment of acquittal. Additionally, Petitioner also requests such other and further relief to which he may be justly entitled at law or in equity.

This 4th day of August, 2015.

17

Respectfully submitted,

By: */s/ John T Floyd*
John Thomas Floyd III
Texas Bar No. 00790700
*/s/ Christopher M. Choate*
Christopher M. Choate
Texas Bar No. 24045655
Principal Office
The Kirby Mansion
2000 Smith Street
Houston, TX 77002
Tel: 713-581-1060
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this appellate brief has been served upon Richard Villarreal, SBOT 00797602, Assistant District Attorney, Tom Green County, 124 West Beauregard, San Angelo, Texas 76903 on this 4th day of August, 2015 by placing same in the United States Postal System, or by facsimile transmission to 325-658-6831.

*/s/ John T Floyd*
*/s/ Christopher M. Choate*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition conforms to the requirements of Tex. R. App. Proc. 9.4(i)(2)(D), and consists of 4,485 words as calculated by Microsoft Word 2010.

*/s/ John T Floyd*
*/s/ Christopher M. Choate*

**NO. PD-0826-15**

**IN THE**
**TEXAS COURT OF CRIMINAL APPEALS**

_____

No. 03-14-00454-CR
In the Court of Appeals for the
Third District of Texas
June 4, 2015

_____

**CLIFTON CREWS HOYT,**
**Appellant**

**vs.**

**THE STATE OF TEXAS,**
**Appellee**

_____

**APPENDIX TO**
**PETITION FOR DISCRETIONARY REVIEW**
**OF APPELLANT CLIFTON CREWS HOYT**

By: _/s/ **John T Floyd**_
John Thomas Floyd III
Texas Bar No. 00790700

By: _/s/ **Christopher M. Choate**_
Christopher M. Choate
Texas Bar No. 24045655

Principal Office
The Kirby Mansion
2000 Smith Street
Houston, TX 77002
Tel: 713-224-0101

## APPENDIX

1.  Court of Appeals Memorandum Opinion dated June 4, 2015

2.  Court of Appeals Judgment

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00454-CR

**Clifton Crews Hoyt, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
### NO. D-10-0665-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clifton Crews Hoyt was charged with the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04(a). The indictment also alleged that Hoyt had previously been convicted of two counts of driving while intoxicated, which elevated the severity of the charge at issue to a third-degree felony. *See id.* § 49.09(b). Further, the indictment alleged that Hoyt was previously convicted of a felony-level offense for driving while intoxicated, which elevated the permissible punishment range for the offense at issue to that of a second-degree felony. *See id.* § 12.42(a); *see also id.* § 12.33 (setting out permissible punishment range for second-degree felony). Prior to trial, Hoyt filed a motion to suppress evidence pertaining to the traffic stop as well as his arrest, and the district court denied the motion to suppress. At the conclusion of the trial, the district court sentenced Hoyt to twelve years' imprisonment. In two issues on appeal, Hoyt asserts that the district

court erred by denying his motion to suppress and that the evidence supporting his conviction is legally insufficient. We will affirm the district court's judgment of conviction.

## DISCUSSION

**Motion to Suppress**

In his first issue on appeal, Hoyt contends that the district court abused its discretion by denying his motion to suppress. In particular, Hoyt contends that the district court abused its discretion when it made its ruling because Officer Bruce Stewart did not have a sufficient basis to initiate a traffic stop or to detain Hoyt to conduct field-sobriety tests.[1]

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, No. PD-0605-14, 2015 Tex. Crim. App. LEXIS 516, at *8 (Tex. Crim. App. Apr. 29, 2015). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'"

---

[1] When challenging the district court's ruling, Hoyt primarily refers to testimony from Officer Stewart indicating that he was dispatched to a local restaurant to investigate a complaint regarding a potentially intoxicated driver who was driving a car that matched Hoyt's car but that the vehicle was not at the restaurant when the officer arrived. After noting this testimony, Hoyt contends that the State did not present any evidence regarding the information that the dispatcher had prior to sending Officer Stewart to the restaurant or regarding the person who made the complaint. For these reasons, Hoyt contends that the tip that the dispatcher received could not establish probable cause or reasonable suspicion to arrest or detain Hoyt. However, as set forth in the opinion, Officer Stewart's observations of Hoyt's driving established reasonable suspicion. Accordingly, we need not consider the information or lack of information that the dispatcher received prior to Officer Stewart initiating a traffic stop.

2

*State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)); *see also id.* (explaining that trial court's ruling on motion to suppress will be upheld if it is correct on theory of law applicable to case regardless of whether trial court based its ruling on that theory).

"Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. ref'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and must be supported by reasonable suspicion, which "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity," *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). In addressing whether a stop was supported by reasonable suspicion, reviewing courts must consider whether the officer's actions were justified at the inception and whether the circumstances justifying the stop are reasonably related to the seizure's scope. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). In this context, reasonableness is measured objectively by considering the totality of the circumstances. *Id.*; *see also id.* at 62 (noting that determination regarding reasonableness of search or seizure is reviewed de novo). Moreover, "[i]f during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana

3

1999, pet. ref'd); *see also Woodard*, 341 S.W.3d at 414 (explaining that information known to officer gave him probable cause to arrest defendant or reasonable suspicion to detain and administer field-sobriety tests).

During the trial, Officer Stewart was the only witness. In his testimony, he explained that while he was on patrol at approximately 2:30 a.m., he observed the vehicle that Hoyt was driving make "a wide right turn."[2] Further, Officer Stewart explained that he believed that the manner in which the turn was made constituted a traffic violation because drivers are obligated to stay as close as possible to the curb. Consistent with Officer Stewart's testimony, the Transportation Code specifies that a driver who is making "a right turn at an intersection . . . shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway." *See*

---

[2] On appeal, Hoyt notes that although Officer Stewart had a video camera in his car at the time, the camera did not record the turn at issue and did not activate until the emergency lights were turned on. Accordingly, Hoyt insists that this Court cannot adequately determine whether the right turn constituted a traffic violation. However, the officer who observed the turn did testify and was subject to cross-examination by Hoyt, and the officer's testimony was uncontradicted. *See Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012) (explaining that when reviewing ruling on motion to suppress, appellate courts extend almost total deference to application of law to fact question turning on credibility and demeanor).

4

Tex. Transp. Code § 545.101(a).[3]  When ruling on Hoyt's motion to suppress, the district court

expressly found that Officer Stewart observed Hoyt make a wide right turn.

In light of the district court's determination and of Officer Stewart's testimony, we

must conclude that the district court did not abuse its discretion by determining that Officer Stewart

was authorized to initiate a traffic stop of Hoyt.  *See Bullock v. State*, 426 S.W.3d 226, 229 (Tex.

App.—Houston [1st Dist.] 2012, no pet.) (providing that "[a] law enforcement officer may lawfully

stop and detain a motorist who commits a traffic violation"); *Vasquez v. State*, 324 S.W.3d 912, 919

(Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (explaining that officer may initiate traffic stop

if he has reasonable basis to believe that individual has committed traffic offense).

---

[3] In his reply brief, Hoyt asserts that a wide right turn does not constitute a traffic violation
if it is "done in a manner that is not unsafe or dangerous."  As support for this proposition, Hoyt
refers to cases from various courts, including one from this Court, pertaining to alleged violations
of the provision of the Transportation Code requiring drivers to drive within a single lane of traffic.
Specifically, the statute provides that a driver "shall drive as nearly as practical entirely within a
single lane" and "may not move from the lane *unless that movement can be made safely*."  Tex.
Transp. Code § 545.060(a) (emphasis added).  In light of the phrase authorizing crossing a lane when
it is safe to do so, this Court determined that crossing a lane marker does not constitute a traffic
offense unless the movement was not safe at that time or was not made safely and that observing a
driver cross a lane marker when it is safe to do so does not establish reasonable suspicion to
conclude that a traffic violation has occurred. *See Hernandez v. State*, 983 S.W.2d 867, 870-72 (Tex.
App.—Austin 1998, pet. ref'd) (determining that crossing lane marker under circumstances of case
when it was safe to do so did not provide reasonable suspicion that driver was intoxicated or that
traffic offense had occurred); *see also Fowler v. State*, 266 S.W.3d 498, 499 (Tex. App.—Fort Worth
2008, pet. ref'd) (holding that officer does not have reasonable suspicion for traffic stop when officer
observes "the tires of the defendant's vehicle cross into an adjacent same-direction lane by a tire's
width a single time" and "when there is no other traffic in the area"); *Eichler v. State*, 117 S.W.3d
897, 901 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (concluding that single instance of
crossing lane marker into lane traveling in same direction when no showing was made that it was
unsafe to do so at that time was insufficient to establish reasonable suspicion).  However, unlike the
statute requiring drivers to remain within a single lane of traffic, the statute at issue in this case does
not contain any language potentially excusing the prohibited conduct if the turn is done in a safe
manner. *Compare* Tex. Transp. Code § 545.060(a), *with id.* § 545.101(a).

Regarding the events that occurred after he observed the traffic violation, Officer Stewart explained that when he turned on his emergency lights, Hoyt's "vehicle veered to the north side of the [road], struck the curb, and then it started pulling to the south side, and as it came to a stop, it struck the south side curb." Regarding the first contact with the curb, Officer Stewart explained that Hoyt "hit the curb pretty hard." In his testimony, Officer Stewart also stated that when he approached Hoyt's vehicle and began talking to Hoyt, he noticed the odor of alcohol coming from Hoyt and observed that Hoyt's "eyes were red, bloodshot eyes." Furthermore, Officer Stewart related that based on these indicators of intoxication as well as Hoyt's driving, he asked Hoyt to perform field-sobriety tests. When denying Hoyt's motion to suppress, the district court entered findings that were consistent with Stewart's testimony.

In challenging the district court's ruling, Hoyt contends that bloodshot eyes and the smell of alcohol are insufficient to establish intoxication because red eyes can be caused by any number of conditions and because an individual can smell like alcohol after consuming an amount of alcohol well below the amount that would render someone legally intoxicated. Further, Hoyt points to testimony from Officer Stewart in which he admitted that red eyes, without more, do not establish that someone is intoxicated, that the smell of alcohol cannot be used to ascertain how much an individual has had to drink, and that it is common for individuals who are not impaired to commit the traffic offense of making a wide right turn.

However, the existence of reasonable suspicion is made after considering the totality of the circumstances, *State v. Nelson*, 228 S.W.3d 899, 904-05 (Tex. App.—Austin 2007, no pet.), and the court of criminal appeals has explained that evidence that would logically raise an inference

6

that an individual is intoxicated includes, among other things, "erratic driving" and "bloodshot eyes," *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). *See also* Tex. Penal Code § 49.01(2)(A) (defining term intoxicated as meaning "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body"). Consistent with these indicators, as set out above, Officer Stewart testified that he observed Hoyt commit a traffic violation at approximately 2:30 a.m., that Hoyt exhibited erratic driving when the police lights were turned on, and that Hoyt had red eyes and smelled like alcohol.

In light of the district court's determinations and of Officer Stewart's testimony, we must conclude that the district court did not abuse its discretion by concluding that Officer Stewart was authorized to detain Hoyt in order to ask him to perform field-sobriety tests because reasonable suspicion existed that Hoyt had committed the offense of driving while intoxicated.

For all of these reasons, we conclude that the district court did not abuse its discretion by denying Hoyt's motion to suppress and, therefore, overrule Hoyt's first issue on appeal.

**Legal Sufficiency of the Evidence**

In his second issue on appeal, Hoyt asserts that the evidence presented during the trial is legally insufficient to support his conviction for driving while intoxicated.[4] As set out above,

---

[4] On appeal, Hoyt also contends that the evidence is factually insufficient. However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *cf. Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "[w]e do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

the Penal Code specifies that an individual commits that offense if he "is intoxicated while operating a motor vehicle in a public place," Tex. Penal Code § 49.04(a), and defines intoxicated, in part, as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," *id.* § 49.01(2). When challenging his conviction, Hoyt limits his arguments to whether there was sufficient evidence to show that he was intoxicated.

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In addition to Officer Stewart's testimony regarding Hoyt committing a traffic violation by making a wide right turn, veering from one side of the road to the other and striking the curb on both sides, having bloodshot eyes, and smelling like alcohol, Officer Stewart also described

8

the results of Hoyt's field-sobriety testing.[5] *See Kirsch*, 306 S.W.3d at 745 (listing "inability to perform field-sobriety tests or follow directions" as "evidence that would logically raise an inference that the defendant was intoxicated"). In particular, Officer Stewart explained that he performed the horizontal gaze nystagmus test on Hoyt and that he observed the maximum number of clues of intoxication during the testing. Next, Officer Stewart explained that he asked Hoyt to perform the walk-and-turn test and that Hoyt started the test before being told to begin, "missed heel-to-toe steps, used his arms for balance, stepped off line, and made an improper turn." When summarizing Hoyt's performance, Officer Stewart testified that Hoyt displayed six of eight possible clues of intoxication. In addition, Officer Stewart also related that he asked Hoyt to perform the one-leg-stand test and that during the test, Hoyt used his arms for balance, put his foot down, and swayed. When describing the results, Officer Stewart revealed that Hoyt exhibited three of four possible indicators of intoxication. Furthermore, Officer Stewart stated that after assessing the results and after considering his prior observations, he formed an opinion that Hoyt was intoxicated and arrested him for driving while intoxicated.[6] *See Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (providing that, in general, officer's testimony that individual is intoxicated provides sufficient evidence to establish element of intoxication). Finally, Officer Stewart related that after he arrested Hoyt, he asked Hoyt to submit a sample of his breath or blood for alcohol testing but that Hoyt refused to provide a sample. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008)

---

[5] During the trial, Officer Stewart explained that he received special training on how to administer field-sobriety tests, that he has been certified to perform those tests, and that he administers those tests as a regular part of his job.

[6] In his testimony, Officer Stewart also related that when he performed a search incident to arrest, he found less than two ounces of marijuana inside the pocket of Hoyt's pants.

9

(noting that defendant's refusal to submit to breath test "tends to show a consciousness of guilt"); *see also Derrick v. State*, No. 05-14-00802-CR, 2015 Tex. App. LEXIS 4723, at * 7 (Tex. App.—Dallas May 8, 2015, no pet. h.) (mem. op., not designated for publication) (explaining that individual's refusal to submit to breath test "can support the inference that he would fail the test because he thought he was intoxicated").

When challenging the sufficiency of the evidence, Hoyt points to the portions of Officer Stewart's testimony discussed in the previous issue in which he admitted that the observations forming the basis for his decision to ask Hoyt to perform field-sobriety testing, including the observations of Hoyt's driving, of Hoyt's smelling like alcohol, and of Hoyt's bloodshot eyes, would not necessarily indicate that someone was intoxicated if those factors were considered individually. Furthermore, Hoyt seems to suggest that the portion of Officer Stewart's testimony in which he discussed the results of the field-sobriety testing should not be considered because the tests were not done in compliance with "standardized protocols" and are, according to Hoyt, unreliable. *See Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that nystagmus test has been recognized as valid scientific test and that it is properly applied when officer complies with standardized procedures). As support for his assertion that the testing was done improperly, Hoyt points to the portion of Officer Stewart's testimony in which he agreed that before performing a nystagmus test, officers should turn a suspect away from potential distractions but admitted that the testing that he performed could have been done in "a better environment" because his emergency lights were on for part of the test, because Hoyt was facing the headlights of passing traffic when performing the test, and because there were officers walking

10

around the area of the test. In addition, Hoyt refers to Officer Stewart's testimony in which he related that during the walk-and-turn and one-leg-stand tests, the testing officer is not supposed to make any comments but that he continued to provide instructions during the tests.[7] Finally, Hoyt highlights the portion of Officer Stewart's testimony in which he admitted that the failure to comply with the standardized protocols could affect the results of a field-sobriety test and could be distracting.

However, Hoyt did not challenge the admissibility of the results of any of the field-sobriety tests on these grounds before or during the trial, nor did he object to Officer Stewart's testimony regarding the testing that he performed. *See* Tex. R. App. P. 33.1(a) (setting out requirements for preserving complaint for appeal); Tex. R. Evid. 103 (providing that error may not be based on admission of evidence unless timely objection is made or motion to strike appears in record); *Reyes v. State*, 361 S.W.3d 222, 233 (Tex. App.—Fort Worth 2012, pet. ref'd) (noting that failure to object "forfeits complaints about the admissibility of evidence"); *see also Gowin v. State*, No. 12-07-00233-CR, 2008 Tex. App. LEXIS 6873, at *3-6 (Tex. App.—Tyler Sept. 17, 2008, no pet.) (mem. op., not designated for publication) (concluding that defendant waived objections regarding nystagmus test by failing to properly object). Moreover, in reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was

---

[7] In his opening brief and in his reply brief, Hoyt seems to suggest that the evidence was insufficient in this case, in part, because Officer Stewart admitted that he could not remember how many field-sobriety tests he conducted. However, after reviewing the officer's statement in light of his surrounding testimony, we believe that his statement is more properly interpreted as relating that the officer could not specify how many times in his career as a police officer that he has asked an individual to submit to field-sobriety testing and then released the individual without arresting him. Regardless, we do not believe that this portion of the officer's testimony could render the remaining evidence legally insufficient.

11

permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added).  Furthermore, when deciding what weight, if any, to give to the evidence regarding the results of the field-sobriety tests, the district court was aided by the additional testimony from Officer Stewart explaining that he believed that the results of the nystagmus testing were reliable; that any of the potential distractions did not have an impact on the results of the nystagmus test; that he was very close to Hoyt during the nystagmus test, was able to see Hoyt's eyes, and was able to observe that Hoyt's eyes were fixed on the testing instrument; that when he talked to Hoyt during the walk-and-turn and one-leg-stand tests, he was attempting to "direct [Hoyt] in the right way" because Hoyt was not following the instructions; and that when he talked to Hoyt during the one-leg-stand test, he was just asking Hoyt to point his toes. *Cf. Plouff*, 192 S.W.3d at 219 (explaining that slight variations in administration of nystagmus test do not render testimony regarding results unreliable or inadmissible but may affect weight to be given to testimony).

In light of all of the evidence previously summarized as well as the reasonable inferences that the district court could have made from that evidence and given our standard of review for legal-sufficiency challenges, we conclude that the evidence is legally sufficient to support the district court's determination that Hoyt was intoxicated.  Accordingly, we overrule Hoyt's second issue on appeal.

## CONCLUSION

Having overruled Hoyt's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   June 4, 2015

Do Not Publish

13

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JUNE 4, 2015

### NO. 03-14-00454-CR

**Clifton Crews Hoyt, Appellant**

**v.**

**The State of Texas, Appellee**

**APPEAL FROM 391ST DISTRICT COURT OF TOM GREEN COUNTY**
**BEFORE PURYEAR, PEMBERTON, AND BOURLAND**
**AFFIRMED -- OPINION BY JUSTICE PURYEAR**

This is an appeal from the judgment of conviction entered by the trial court. Having reviewed the record and the parties' arguments, the Court holds that there was no reversible error in the trial court's judgment. Therefore, the Court affirms the trial court's judgment of conviction. The appellant shall pay all costs relating to this appeal, both in this Court and the court below.